Argued November 1, 1976, reversed and remanded March 3, petition for rehearing denied March 29, 1977

ZIDELL, *Respondent—Cross-Appellant,*
*v.*
ZIDELL, INC. et al, *Appellants—Cross-Respondents.*
(Case No. 407-187, SC 24128)

ZIDELL, *Respondent—Cross-Appellant,*
*v.*
ZIDELL DISMANTLING, INC. et al,
*Appellants—Cross-Respondents.*
(Case No. 407-188, SC 24129)

ZIDELL, *Respondent—Cross-Appellant,*
*v.*
ZIDELL EXPLORATIONS, INC. et al,
*Appellants—Cross-Respondents.*
(Case No. 407-189, SC 24130)

ZIDELL, *Respondent—Cross-Appellant,*
*v.*
TUBE FORGINGS OF AMERICA, INC. et al,
*Appellants—Cross-Respondents.*
(Case No. 407-190, SC 24131)

560 P2d 1086

Norman J. Wiener, of Miller, Anderson, Nash, Yerke & Wiener, Portland, argued the cause for appellants. With him on the briefs were Barnes H. Ellis, of Davies, Biggs, Strayer, Stoel & Boley, Portland, for appellants Jack Rosenfeld and Stanley Rosenfeld; Jack L. Kennedy, of Kennedy & King, Portland, for appellant Emery Zidell; and John J. Haugh, of O'Connell, Goyak & Haugh, P.C., Portland, for appellant Jay Zidell.

Paul R. Meyer, Portland, argued the cause for respondent. With him on the brief were Charles L. Kobin and Kobin & Meyer, Portland.

Before Denecke,* Chief Justice, and O'Connell,** Holman, Tongue, Howell, Bryson, and Bohannon, Justices.

HOWELL, J.

*Denecke, C. J., did not participate in this decision.
**Term expired January 3, 1977.

## HOWELL, J.

These four suits were filed by Arnold Zidell, a minority shareholder of four related, closely-held corporations, seeking to compel the directors of those corporations to declare dividends. The four cases were tried together in the circuit court and have been consolidated on appeal. A fifth suit was also tried simultaneously in the trial court but is now the subject of a separate appeal.[1] Plaintiff's complaints alleged that defendants "arbitrarily, unreasonably and in bad faith" refused to declare more than a modest dividend in 1973. The trial court ordered each of the defendant corporations to declare additional dividends out of its earnings for 1973 and 1974. The decrees also directed the payment of plaintiff's attorney fees out of those dividends.

Defendants have appealed, contending that the court was not justified in ordering the declaration of any additional dividends. Plaintiff cross appeals, contending that both the dividends and the attorney fees should have been larger. We review de novo. The following is a summary of our review of the transcript and the exhibits.

The individual defendants are directors of the defendant corporations. The corporate defendants (Zidell, Inc., Zidell Dismantling, Inc., Zidell Explorations, Inc., and Tube Forgings of America, Inc.) are affiliated corporations engaged in the business of scrapping shipping vessels, building and selling barges, buying and selling scrap metal, and marketing industrial valves. All are operated as divisions of the Zidell family business.

The family business began as a partnership and was later incorporated. During World War II, Sam Zidell, father of plaintiff Arnold Zidell and defendant Emery Zidell, bought out his original partner and took

---

[1] *Zidell v. Zidell, Inc. et al* (Multnomah County Circuit Court # 407-186), decided this day, 277 Or 423, 560 P2d 1091 (1977).

[ 415 ]

in Jack Rosenfeld as a 25 per cent partner. He also transferred one-half of his 75 per cent interest to his wife, Rose. Later, both Emery Zidell and Arnold Zidell came into the business. Emery has been active in the business since shortly after World War II. Arnold, who is much younger, devoted his full time to the business from 1960 until his resignation in 1973. Gradually, Emery and Arnold acquired equal shares in the business from Sam and Rose Zidell. By 1966 Sam Zidell had retired, and the partnership consisted of Emery Zidell (37½%), Arnold Zidell (37½%), and Jack Rosenfeld (25%).

In the meantime, three of the defendant corporations had been organized to carry on separate aspects of the family business. Their stock was held by the three partners in proportion to their partnership interests. The partners also served as directors, and Emery acted as chief executive officer. In 1968, the fourth of the defendant corporations, Zidell, Inc., was organized and the remaining partnership assets were transferred to it. The stock in Zidell, Inc., like that of the other three corporations, was held in the same proportions as the previous partnership interests.

In May, 1972, Jack Rosenfeld sold all of his stock in Tube Forgings of America, Inc., and a portion of his stock in the other three defendant corporations to Jay Zidell, Emery Zidell's son.[2] This transaction effectively gave Emery and his son Jay a majority interest in each of the family corporations. Arnold did not learn of the sale until after it was consummated.

There had previously been some animosity between Emery and Arnold, and this friction apparently increased after Jay's purchase of the Rosenfeld stock. There is evidence that some of the ill feeling centered around the fact that Jay Zidell's salary had been increased, while Emery refused to approve a similar

---

[2] Jay was designated as purchaser, but his parents provided the down payment and guaranteed the payment of his installment obligations.

increase in Arnold's salary. There was other evidence that Emery was displeased with Arnold's lifestyle. Finally, in May of 1973, at a special meeting of the board of directors, Arnold demanded that his salary be raised from $30,000 to $50,000 a year, saying that if his request was not granted he would resign. His request was refused, and Arnold thereupon resigned his employment in the business. He did not resign his directorships in the defendant corporations, but when his terms expired he was not reelected.

Prior to Arnold's resignation, the customary practice had been to retain all earnings in the business rather than to distribute profits as dividends. Arnold had agreed with this policy, since all significant stockholders were active in the business and received salaries adequate for their needs.[3] Following his resignation, however, Arnold demanded that the corporations begin declaring reasonable dividends. Thereafter, a dividend was declared and paid on the 1973 earnings of each corporation.

Arnold contends that these dividends are unreasonably small and were not set in good faith. He notes that at about the same time, corporate salaries and bonuses were increased substantially. Arnold does not contend that these salaries are excessive in his briefs on appeal. He does argue, however, that the change in compensation policy, coinciding as it did with his departure from active involvement in the business, is evidence of a concerted effort by the other shareholders to wrongfully deprive him of his right to a fair proportion of the profits of the business. He points out that each corporation had substantial retained earnings at the end of 1973, and he argues that he was entitled to a larger return on his equity.

The trial court specifically declined to rule that defendants acted in bad faith but held that larger

---

[3] A few shares in Tube Forgings of America were apparently held by employees of that corporation.

dividends should have been declared in order to allow plaintiff a reasonable return. The court then ordered the declaration of a much larger dividend than that which had been set by the board of directors in each case.

■■ We have recognized that those in control of corporate affairs have fiduciary duties of good faith and fair dealing toward the minority shareholders. *See, e.g., Baker v. Commercial Body Builders,* 264 Or 614, 629, 507 P2d 387, 56 ALR3d 341 (1973). Insofar as dividend policy is concerned, however, that duty is discharged if the decision is made in good faith and reflects legitimate business purposes rather than the private interests of those in control. *See, e.g., Gottfried v. Gottfried,* 73 NYS2d 692, 695 (1947):

> "The essential test of bad faith is to determine whether the policy of the directors is dictated by their personal interests rather than the corporate welfare. * * *."

A similar situation was recently reviewed by the Supreme Court of Maine in *Gay v. Gay's Super Markets, Inc.,* 343 A2d 577 (Me 1975). That court analyzed both the duties of corporate directors and the proper role of the courts in overseeing corporate dividend policies in the following terms:

> "To justify judicial intervention in cases of this nature, it must, as a general proposition, be shown that the decision not to declare a dividend amounted to fraud, bad faith or an abuse of discretion on the part of the corporate officials authorized to make the determination.
>
> "* * * * *
>
> "The burden of demonstrating bad faith, fraud, breach of fiduciary duty or abuse of discretion on the part of the directors of a corporation rests on the party seeking judicial mandatory relief respecting the declaration of dividends. * * *
>
> "Furthermore, judicial review of corporate management decisions must be viewed in the light of this other rule that 'it is not the province of the court to act as

general manager of a private corporation or to assume the regulation of its internal affairs, * * *.' *Bates Street Shirt Company v. Waite,* 130 Me 352, 359, 156 A 293, 298 (1931).

> "*If there are plausible business reasons supportive of the decision of the board of directors, and such reasons can be given credence, a Court will not interfere with a corporate board's right to make that decision. It is not our function to referee every corporate squabble or disagreement.* It is our duty to redress wrongs, not to settle competitive business interests. Absent any bad faith, fraud, breach of fiduciary duty or abuse of discretion, no wrong cognizable by or correctable in the Courts has occurred." *Id* at 580. (Emphasis added.)

*See also United States v. Byrum,* 408 US 125, 140, 92 S Ct 2382, 33 LEd 2d 238 (1972); *Kroese v. General Steel Castings Corp.,* 179 F2d 760, 763 (3d Cir 1950); *Channon v. H. Channon Co.,* 218 Ill App 397, 400 (1920); *Cole Real Estate Corp. v. Peoples Bank & Trust Co.,* 310 NE2d 275, 280 (Ind App 1974); *Wilkes v. Springside Nursing Home, Inc.,* 353 NE2d 657, 663 (Mass 1976); *Dodge v. Ford Motor Co.,* 204 Mich 459, 170 NW 668, 682 (1919); *Keough v. St. Paul Milk Co.,* 205 Minn 96, 285 NW 809, 821 (1939). *Cf. Stipe v. First National Bank,* 208 Or 251, 278-79, 301 P2d 175 (1956); *Ostlind v. Ostlind Valve, Inc.,* 178 Or 161, 186-89, 165 P2d 779 (1946). We agree with these authorities, and we have found no cases to the contrary.

■ Plaintiff had the burden of proving bad faith on the part of the directors in determining the amount of corporate dividends. In the present case, plaintiff has shown that the corporations could afford to pay additional dividends, that he has left the corporate payroll, that those stockholders who are working for the corporations are receiving generous salaries and bonuses, and that there is hostility between him and the other major stockholders. We agree with plaintiff that these factors are often present in cases of oppression or attempted squeeze-out by majority shareholders. *See*

*generally* F. H. O'Neal, Oppression of Minority Stock-holders 57-103, §§ 3.02-3.03 (1975). They are not, however, invariably signs of improper behavior by the majority. *See Gottfried v. Gottfried, supra* at 695:

> "There are no infallible distinguishing earmarks of bad faith. The following facts are relevant to the issue of bad faith and are admissible in evidence: Intense hostility of the controlling faction against the minority; exclusion of the minority from employment by the corporation; high salaries, or bonuses or corporate loans made to the officers in control; the fact that the majority group may be subject to high personal income taxes if substantial dividends are paid; the existence of a desire by the controlling directors to acquire the minority stock interests as cheaply as possible. *But if they are not motivating causes they do not constitute 'bad faith' as a matter of law.*" (Emphasis added.)

Defendants introduced a considerable amount of credible evidence to explain their conservative dividend policy. There was testimony that the directors took into consideration a future need for expensive physical improvements, and possibly even the relocation of a major plant; the need for cash to pay for large inventory orders; the need for renovation of a nearly obsolescent dock; and the need for continued short-term financing through bank loans which could be "called" if the corporations' financial position became insecure. There was also evidence that earnings for 1973 and 1974 were abnormally high because of unusual economic conditions that could not be expected to continue.

In rebuttal, plaintiff contends that the directors did not really make their decisions on the basis of these factors, pointing to testimony that they did not rely on any documented financial analysis to support their dividend declarations. This is a matter for consideration, but it is certainly not determinative. All of the directors of these corporations were active in the business on a day-to-day basis and had intimate first-hand knowledge of financial conditions and

present and projected business needs. In order to substantiate their testimony that the above factors were taken into consideration, it was not necessary that they provide documentary evidence or show that formal studies were conducted. Their testimony is believable, and the burden of proof on this issue is on the plaintiff, not the defendants.

Nor are we convinced by plaintiff's arguments that we should approve the forced declaration of additional dividends in order to prevent a deliberate squeeze-out. Plaintiff left his corporate employment voluntarily. He was not forced out. Although the dividends he has since received are modest when viewed as a rate of return on his investment, they are not unreasonable in light of the corporations' projected financial needs. Moreover, having considered the evidence presented by both sides, we are not persuaded that the directors are employing starvation tactics to force the sale of plaintiff's stock at an unreasonably low price. *See* O'Neal & Derwin, Expulsion or Oppression of Business Associates, § 3.02 (1961); 2 O'Neal, Close Corporations, § 8.07 (1971). *Compare Campbell v. Ford Industries, Inc.,* 266 Or 479, 513 P2d 1153 (1973); *Baker v. Commercial Body Builders, supra.*

Since we have determined that plaintiff has not carried his burden of proving a lack of good faith, we must conclude that the trial court erred in decreeing the distribution of additional dividends.[4]

Reversed and remanded with directions to enter decrees of dismissal.

---

[4] Although the complaints raised only the question of dividends on the 1973 earnings, the trial court decreed that two of the corporations also declare additional dividends for the year 1974. The parties disagree as to whether a court of equity has the power to enter a decree that goes beyond the scope of the pleadings. However, we do not find it necessary to resolve that question in this case because, assuming that the trial court had the power, we believe that it was error to exercise it in these cases. In our view, plaintiff has not proven that the directors of Zidell, Inc., and Zidell Explorations acted in bad faith when they declared the dividends on the 1974 earnings, and the trial court made no finding to the contrary.