Argued November 1, 1976, affirmed March 3, petition for rehearing denied
March 29, 1977

ZIDELL, *Appellant,*
*v.*
ZIDELL, INC. et al, *Respondents.*
(Case No. 407-186, SC 24099)

560 P2d 1091

Paul R. Meyer, Portland, argued the cause for appellant. With him on the briefs were Charles L. Kobin, Mark Silverstein, Leo Levenson, and Kobin & Meyer, Portland.

Barnes H. Ellis, of Davies, Biggs, Strayer, Stoel and Boley, Portland, argued the cause for respondents. With him on the brief were Jack L. Kennedy, of Kennedy & King, Portland, for respondent Emery Zidell, and John J. Haugh, of O'Connell, Goyak & Haugh, P. C., Portland, for respondent Jay Zidell; and

Norman J. Wiener and R. Alan Wight, of Miller, Anderson, Nash, Yerke & Wiener, Portland, for respondents Zidell, Inc.; Zidell Dismantling, Inc.; Zidell Explorations, Inc.; and Tube Forgings of America, Inc.

Before Denecke,* Chief Justice, and O'Connell,** Holman, Tongue, Howell, Bryson and Bohannon, Justices.

HOWELL, J.

---

*Denecke, C. J., did not participate in this decision.
**Term expired January 3, 1977.

**HOWELL, J.**

This is a companion case to *Zidell v. Zidell, Inc.,* decided this day, 277 Or 413, 560 P2d 1086 (1977). In this case, plaintiff Arnold Zidell, suing derivatively on behalf of four of the Zidell corporations,[1] sought a decree directing Jay Zidell, one of the individual defendants, to transfer at cost to the corporations the shares in each that he had purchased from defendant Jack Rosenfeld. Plaintiff's theory was that the opportunity to purchase the Rosenfeld shares belonged to the corporations, and that the directors breached their duties to the corporations by arranging for a private, rather than a corporate, purchase.[2]

The trial court found that plaintiff had failed to establish any right to relief and entered a decree dismissing the complaint, from which plaintiff appeals. We affirm.

In our opinion in the companion cases, we briefly described the transaction giving rise to this litigation. Further details are appropriate here.

Prior to the sale in question, plaintiff and defendant Emery Zidell each controlled 37½ per cent of the shares in these corporations.[3] Jack Rosenfeld's 25 per cent interest was, therefore, the key to ultimate control by either plaintiff or Emery Zidell. During 1971 plaintiff asked Rosenfeld whether he would be interested in selling his stock in the Zidell corporations. Rosenfeld replied: "I would be interested in selling my stock. Everything I have is for sale."

---

[1] *Zidell, Inc., Zidell Dismantling, Inc., Zidell Explorations, Inc.,* and *Tube Forgings of America, Inc.*

[2] In the trial court, plaintiff also sought a return of all compensation paid to Jay Zidell in excess of that which was "reasonable." However, this issue has not been pursued on appeal, and, therefore, it will not be discussed in this opinion.

[3] The percentage interests were slightly different in *Tube Forgings of America, Inc.,* because a few shares were held by persons who are not parties to this litigation. *See Zidell v. Zidell, Inc.,* 277 Or 413, 560 P2d 1086 n. 3 (1977).

Nothing further was done or said at that time, but plaintiff later reported this conversation to Emery Zidell. Without informing plaintiff of his intentions, Emery then went to Rosenfeld and began negotiations for the purchase of some of Rosenfeld's shares. The purchase was consummated in May, 1972.

Under the terms of the purchase agreement, Rosenfeld agreed to sell to Jay Zidell, Emery's son, all of his stock in Tube Forgings of America, and slightly more than half of his 25 per cent interest in each of the other three corporations. The total price was $813,350. A down payment of $213,350 was provided by Jay's father, Emery, and in return Jay gave his father a demand note in that amount bearing 4 per cent interest. Under the purchase agreement, the balance of $600,000 due Rosenfeld was to be paid in monthly installments of at least $4,250, including interest at 4 per cent. Payment of these installments was guaranteed by Emery Zidell and his wife. It is undisputed that plaintiff did not learn of the purchase until after it was an accomplished fact.

Plaintiff contends that this transaction was, in effect, a purchase of control by Emery, and we will so consider it. Clearly, Jay Zidell would have been unable to make the purchase without his father's financial backing. The terms of the agreement were apparently negotiated by Emery Zidell and Jack Rosenfeld. Rosenfeld testified that it was Emery who suggested the exact number of shares in Zidell, Inc., Zidell Dismantling, and Zidell Explorations which would be transferred, and the transferred shares were just enough to give Emery and Jay Zidell together a majority of the outstanding shares. We consider this case, therefore, as though the purchase of a controlling interest was made by Emery who, at the time of these transactions, was a member of the board of all of the corporations. Viewed in this manner, the central issue in this case is whether Emery Zidell violated any duty to the corporations involved by purchasing a control-

ling interest in each without offering to the corporations an opportunity to negotiate for the purchase of the Rosenfeld shares.

■ As a general rule, a director violates no duty to his corporation by dealing in its stock on his own account.[4] Plaintiff, however, contends that the rule should be otherwise when the stock is that of a closely-held corporation and the purchase is made at a favorable price and for the purpose of affecting control of the corporation. He argues that Rosenfeld's stock was sold at a bargain price and that the corporations had an interest in insuring that all the shareholders benefited equally from such a purchase.

■ We will accept, for purposes of this opinion, plaintiff's contention that the price paid Rosenfeld for the stock was low in comparison to the stock's actual value and that this purchase, therefore, was a bargain. Nevertheless, we disagree with plaintiff's contention that the bargain was one which rightfully belonged to the corporations.

Plaintiff presented no evidence that the corporations have made a practice of purchasing their own stock or that they ever contemplated doing so in order to maintain proportionate control, and there is no basis for inferring an agreement to that effect.[5] Absent such a corporate policy, there is normally no special corporate interest in the opportunity to purchase its own shares. *See, e.g., Faraclas v. City*

---

[4] *See generally* 3 Fletcher, Cyclopedia of Corporations 218, § 862 (1975). Cases applying or recognizing the general rule in the context of disputes over corporate control include *King Mfg. v. Clay,* 216 Ga 581, 118 Se2d 581 (1961); *Faraclas v. City Vending Company,* 232 Md 457, 194 A2d 298 (1963); *Adams v. Mid-West Chevrolet Corporation,* 198 Okla 461, 179 P2d 147 (1947); *Vulcanized Rubber & Plastics Co. v. Scheckter,* 400 Pa 405, 162 A2d 400 (1960); *Howell v. McCloskey,* 375 Pa 100, 99 A2d 610 (1953); *Sladen v. Rowse,* 347 A2d 409 (RI 1975).

[5] There was some evidence that in past years Tube Forgings of America had redeemed a small number of shares from other shareholders. In our view that evidence was not sufficient to justify an inference that it was the policy of these corporations to redeem large blocks of their own shares.

*Vending Co.,* 232 Md 457, 194 A2d 298 (1963):

"Of course, a corporation, as such, has no interest in its outstanding stock or in dealings therein by its officers, directors or shareholders. If there is a struggle for control the corporation would normally occupy a neutral position." 194 A2d at 301.

*See also* 3 Fletcher, Cyclopedia of Corporations 218, § 862 (1975).

Only a few cases have held that the purchase of shares by the director of a corporation amounts to the usurpation of a corporate opportunity. Those cases that we have examined all turn on special factual situations, and each is distinguishable from this case.

Thus, in *Sladen v. Rowse,* 347 A2d 409 (RI 1975), the court imposed a constructive trust for the benefit of the corporation on shares purchased by a director of a family corporation. Prior to the purchase, the shares were owned by the only substantial shareholder who was not a family member. The board of directors had considered purchasing these shares to protect the family's controlling interests but had taken no action because the price was too high. Nevertheless, the defendant director did not report to the board that he had been approached about the possibility of a sale of the shares to the corporation at a reduced price. Instead, he secretly appropriated the opportunity for himself and used corporate funds (which he later repaid) to finance part of the transaction.

In *Kelly v. 74 & 76 West Tremont Avenue Corporation,* 4 Misc 2d 533, 151 NYS2d 900 (1956), *mod. on other grounds* 3 AD2d 821, 160 NYS2d 932, *aff'd* 3 NY2d 973, 169 NYS2d 39, 146 NE2d 795 (1957), two close corporations which were the objects of a struggle for control authorized one of their directors to negotiate a purchase of shares by the corporations. Thereafter, he reported to the corporations that the seller's asking price was on a "take it or leave it" basis, and he did not disclose that he personally had been offered the stock at a substantially lower price. The

court held that the corporation was entitled to an opportunity to purchase the shares at the reduced price paid by the director.

In *Faraclas v. City Vending Company, supra,* the corporation had attempted to redeem certain shares, but the purported redemption was invalid because the corporation was insolvent at the time. Learning of the defect in the attempted redemption, one of the directors purchased the shares for himself. The court held that this was a violation of his fiduciary duty. In distinguishing the case before it from the general rule that a corporation normally has no interest in dealings in its stock, the court stated:

"The line is drawn at the point where a purchase for the director's own account has the effect of thwarting a declared corporate policy." 194 A2d at 301.

In our opinion this is a reasonable place to draw the line, particularly in a case like this one.[6] At all relevant times, the individual defendants in this case, who were the parties to the stock transaction, held a majority of the corporate stock and controlled the boards of directors. So far as the record shows, they still do. Were we to hold that this stock purchase constituted a corporate opportunity, a decree that the stock be offered to the corporations would be meaningless. The boards of directors would, undoubtedly, vote to reject the offer. There are no disinterested board members to whom the decision could be referred. Therefore, to be effective the decree would have to mandate the purchase of these shares by the corporations. Certainly where there is no guidance in the form of a "declared corporate policy," such a decree would be an unwarranted intrusion into corporate affairs. It would affect not only the proportionate ownership in the corporations but also their capital structure.

---

[6] We do not intend to express an opinion as to the circumstances under which a corporation whose stock is publicly traded may have an interest in purchasing its own shares at favorable prices.

Plaintiff urges us to adopt the standards employed by the Massachusetts court in *Donahue v. Rodd Electrotype Co. of New England, Inc.,* 328 NE2d 505 (Mass 1975). In *Donahue* the directors of the corporation had voted to purchase the stock owned by a controlling shareholder in order to finance his retirement. The court declared that the fiduciary duties of the members of a close corporation are, at least for some purposes, equivalent to the duties of partners and joint venturers among themselves. 328 NE2d at 515 and n. 18. The court held that the controlling shareholders owed a duty of "utmost good faith and loyalty" to the minority shareholders, and that this duty required that if an opportunity were offered to one member of the controlling group to redeem his shares for his benefit, the same opportunity must be offered to the minority shareholders. *Id.* at 518.

The opinion in *Donahue* evidences a concern to provide greater protection for the minority shareholder in a close corporation than had previously been available in the courts. That court eloquently demonstrates that such a shareholder, because there is rarely any market for his shares, is especially vulnerable to oppressive or unfair treatment by the majority. We do not believe, however, that the protective approach taken in that case would require the corporation to tailor its policies to favor a minority shareholder at the expense of the majority. *See Wilkes v. Springside Nursing Home, Inc.,* 353 NE2d 657, 663 (Mass 1976). *See also Jackson v. Nicolai-Neppach Co.,* 219 Or 560, 587, 348 P2d 9 (1959). That, however, is apparently what plaintiff is seeking in the present case. He is asking that the court require these corporations to purchase Rosenfeld's shares in order to prevent, for plaintiff's benefit, a consolidation of control in the hands of Emery Zidell.

We recognize that this consolidation has placed plaintiff at a disadvantage. Plaintiff, in his capacity as minority shareholder, had a personal interest in main-

taining the balance of power which existed prior to the consolidation. Such an interest on the part of the shareholders in closely-held corporations is frequently protected by special provisions in the corporate articles or bylaws or in shareholder agreements, requiring that before any shares are sold they must first be offered to the corporation or pro rata to all other shareholders.[7] These parties, however, had no such agreement.[8]

Like any minority shareholder who has not obtained by agreement a larger voice in corporate affairs than his stock ownership alone gives him, plaintiff is without an effective voice in corporate policy. He has not, however, shown that the welfare of the corporations requires that they redeem the Rosenfeld stock to prevent its coming under the control of Emery Zidell.[9]

We agree with the trial court that plaintiff has failed to prove that the defendants have usurped a corporate opportunity.

Affirmed.

---

[7] *See generally,* 2 O'Neal, Close Corporations § 7.05 (1971).

[8] Plaintiff did present evidence to show that in the past he, Emery Zidell, and Jack Rosenfeld had made a practice of consulting one another in advance about new business ventures. All were usually offered an opportunity to participate. If participation in a particular venture was not to be in proportion to the parties' shares of the overall business, consent was often obtained in advance. Even if, as plaintiff appears to contend, this evidence were sufficient to establish the existence of an unwritten but enforceable agreement, plaintiff has not asked that such an agreement be enforced, and he has not asked for an opportunity to purchase for himself any portion of the shares sold by Rosenfeld.

[9] Of course, if a controlling interest were to be exercised in the future in such a way so as to violate the fiduciary duties owed by majority owners to a minority stockholder, the minority stockholder could seek an equitable remedy for such conduct. *See Campbell v. Ford Industries, Inc.,* 266 Or 479, 513 P2d 1153 (1973); *Baker v. Commercial Body Builders,* 264 Or 614, 507 P2d 387, 56 ALR3d 341 (1973).