STRONG, Trustee, Appellant, vs. FROMM LABORATORIES, INC., Respondent.*

*April 30—June 5, 1956.*

* Motion for rehearing denied, with $25 costs, on September 11, 1956.

164

For the appellant there were briefs by *Robertson & Hoebreckx* of Milwaukee, and oral argument by *O. S. Hoebreckx*.

For the respondent there was a brief by *Smith, Okoneski, Puchner & Tinkham,* attorneys, and *Jerome A. Maeder* of counsel, all of Wausau, and oral argument by *Mr. Charles F. Smith* and *Mr. Maeder*.

CURRIE, J. The plaintiff's cause of action for a forced liquidation of Fromm Laboratories, Inc., is based upon sec. 180.771, Stats., reading in part as follows:

"(1) Circuit courts have power to liquidate the assets and business of a corporation:

"(a) In an action by a shareholder when it is established:

"1. That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or

"2. That the acts of the directors or those in control of the corporation are illegal or fraudulent; or

"3. That the corporate assets are being misapplied or wasted; or

"4. That the shareholders are deadlocked in voting power, and have failed, for a period which includes at least two con-

secutive annual meeting dates, to elect successors to directors whose term has expired or would have expired upon the election and qualification of their successors."

Unless the deadlock on the part of the shareholders of Fromm Laboratories, Inc., was broken by that which took place at the October 12, 1954, stockholders' meeting, there can be no question but that the trial court was authorized by par. 4, sub. (1) (a), sec. 180.771, Stats., to decree a forced liquidation of the assets and business of that corporation. This is because the shareholders have been deadlocked in voting power and have failed for a period of approximately seven years to elect successor directors to those in office when Dr. Green died in 1947. The by-laws of the corporation required the annual meeting of stockholders to be held on the first Tuesday in June of each year so that the terms of all three directors in office when Dr. Green died on September 6, 1947, would normally have expired on the first Tuesday in June, 1948, except for the provision contained in the by-laws that they were to continue in office until their successors were elected and qualified.

We cannot agree with the conclusion reached by the learned trial judge that the deadlock of the shareholders was broken by that which transpired at the October 12, 1954, stockholders' meeting. In order for a person to have been elected a director at such meeting it was necessary that he receive a majority of the votes cast. 5 Fletcher, Cyc. Corp. (perm. ed.), p. 105, sec. 2020. If the 250 votes cast by Strong against the candidates of the Fromm interests, as well as the 250 votes cast for himself, are to be counted, no candidate received a majority of the votes cast and there was a deadlock.

Counsel for the respondent corporation contend that Strong could not cast votes against a candidate but had to vote for some eligible person, and, therefore, Edward Fromm, as chairman of the October 12, 1954, meeting, properly ruled

that the votes cast by Strong against the Fromm candidates were void. If such contention is followed to its logical conclusion, Strong had no legal way of blocking the election by the Fromm interests of at least three of their candidates to the board of directors. Because of the Fromms' refusal to amend the by-laws so as to render Gale Slater eligible for election as a director, the only eligible candidate for whom Strong could vote for director, other than shareholders of the Fromm group, was himself. Strong being present at the meeting, the trust's 250 shares had to be counted in deciding whether a quorum was present, the by-laws providing that a majority of the issued shares constituted a quorum. Therefore, if he refrained from voting at all, the votes cast by the Fromm interests would have elected all four of the Fromm candidates, as such candidates would have received a majority of the votes cast, which would have been sufficient to have elected them. On this latter point, see 5 Fletcher, Cyc. Corp. (perm. ed.), pp. 106, 107, sec. 2020.

Under the peculiar facts of this case we have no hesitancy in holding that the 250 votes which Strong cast against the Fromm candidates for director were not a nullity and must be counted in determining whether any candidates received a majority. Surely, an owner of 50 per cent of the outstanding stock must be accorded some legal way of so voting such stock as to prevent the other hostile 50 per cent stock interest from electing a majority of the board of directors. Any other determination would reach a grossly inequitable result.

Counsel for the respondent corporation further urge that, in order for a court to invoke par. 4 of sec. 180.771 (1) (a), Stats., and order a forced liquidation of a corporation, there must be a showing made that such liquidation will be beneficial to the interest of the stockholders. The trial court in its memorandum decision held that liquidation would be detrimental to the plaintiff trustee as well as the defendant,

thus clearly indicating that the trial court was of the opinion that a liquidation would not be beneficial to the stockholders.

An excellent discussion of the problems which confront courts in exercising their power to dissolve or liquidate a corporation, where a deadlock of the shareholders has occurred, is contained in an article entitled, "The Sacred Cow of Corporate Existence—Problems of Deadlock and Dissolution" written by Carlos L. Israels, a member of the New York bar, appearing in 19 University of Chicago Law Review, 778. Many of the decided cases dealing with such problem are cited therein. We quote from such article as follows (p. 785):

"It has been suggested that the courts' reluctance to dissolve varies in inverse ratio to the prosperity of the enterprise; that where the faction which happens to be in office at the date of the resignation, death, or other incident which caused the deadlock is continuing to manage the company successfully, it is necessary in addition to prove some measure of exploitation of the minority. In the writer's view the cases do not bear this out."

The respondent's brief quotes the following statement appearing in the annotation in 13 A. L. R. (2d) 1260, 1267, entitled "Dissolution of corporation on ground of intracorporate deadlock or dissension:"

"The view is taken that to permit dissolution under a statute of the kind under consideration, it must be shown that dissolution will be beneficial to the interests of the stockholders."

The only cases cited in the annotation in direct support of the above-quoted statement are New York cases, of which the most recent in date is *Matter of Cantelmo* (1949), 275 App. Div. 231, 88 N. Y. Supp. (2d) 604. The New York statutes authorizing court dissolution in event of a stockholder deadlock are quoted in the opinion in that case. Such statutes contain an express provision that it is only manda-

tory on the court to order a dissolution because of stockholder deadlock if it shall appear "that a dissolution will be beneficial to the stockholders." [1]

Minnesota has a statute authorizing the involuntary dissolution of a corporation, which statute is set forth in the opinion in *In re Involuntary Dissolution of Hedberg-Freidheim & Co.* (1951), 233 Minn. 534, 536, 47 N. W. (2d) 424, which reads as follows:

" 'That there is internal dissension and that two or more factions of the shareholders in the corporation are so deadlocked that *its business cannot longer be conducted with advantage to its shareholders.'* "

We consider it highly significant that our statute, sec. 180.771 (1) (a) 4, contains no provision similar to that found in the statutes of New York and Minnesota requiring the court to take into consideration the element of whether a forced liquidation or dissolution would be beneficial to stockholders in determining the issue of whether to order such a liquidation or dissolution.

In 1951 the Wisconsin legislature enacted a new business corporation code which constitutes present ch. 180 of the statutes except as subsequently amended by the 1953 and 1955 legislatures. This code was drafted by the corporation committees of the Milwaukee and Wisconsin bar associations working together as a joint committee. The members of this joint committee consisted of lawyers who possessed wide experience in corporation practice and included members of the faculty of the law schools of the University of Wisconsin and Marquette University who taught the subject of "Corporations." A summary of the exhaustive research made by, and the prodigious work of, this committee is set forth in Vol. VI, 1950 Report, which the Wisconsin legisla-

---

[1] Sec. 117, New York General Corporation Law.

tive council submitted to the governor and legislature in April, 1951. As originally drafted by such joint committee and enacted by the 1951 legislature, sec. 180.771 (1) (a), Stats., consisted of present pars. 1 to 3, inclusive. Following the enactment of the new code in 1951, the joint corporations committee of the two bar associations continued to conduct a further study for the purpose of proposing amendments to the code which seemed desirable for the purpose of improving the same. The committee, as a result of such further endeavors on its part, proposed certain amendments to the 1953 legislature which were embodied in a single bill and enacted as ch. 399, Laws of 1953.

Among the 1953 amendments so enacted was the addition of present par. 4 to sec. 180.771 (1) (a), Stats., authorizing the court to order a liquidation of a corporation whose shareholders are deadlocked in electing a board of directors and such shareholders have failed for two successive annual meetings to elect a board. This paragraph is patterned after a similar provision which had been enacted by the Illinois legislature in 1951, as sub. (2) of sec. 86 (a) of the Illinois Business Corporation Act (Jones Ill. Stats. Anno., sec. 32.088). While sub. (1) of said sec. 86 (a), which authorizes the Illinois courts to liquidate a corporation when the directors are deadlocked in the management of the corporation and are unable to break such deadlock, contains an express provision that irreparable injury to the corporation or threat of the same, must appear as a condition to exercising this power, such a provision is omitted from sub. (2) which contains substantially the same wording as par. 4 of sec. 180.771 (1) (a), Wis. Stats. Such omission would appear to be most indicative of legislative intent.

Because of the extensive research made by the committee of eminent Wisconsin corporation lawyers who sponsored the 1953 addition of par. 4 of sec. 180.771 (1) (a), Stats., to our new corporation code, we must assume that its members

were familiar with the New York and Minnesota deadlock statutes and court decisions interpreting the same, and that they preferred to word the Wisconsin statute so as not to make dissolution or liquidation, because of a stockholders' deadlock, contingent upon a finding that the same will be beneficial to stockholders. We, therefore, hold that whether or not a liquidation of Fromm Laboratories, Inc., will be beneficial or detrimental to the stockholders is not a material factor to be considered in exercising the power of liquidation conferred by par. 4 of sec. 180.771 (1) (a).

Counsel for the respondent corporation further contend that the power, which is conferred by par. 4 of sec. 180.771 (1) (a), Stats., on a circuit court to order a liquidation because of a deadlock of stockholders, is discretionary in nature, and that there was no abuse of discretion on the part of the trial court in refusing to exercise such power.

Sec. 180.30, Stats., provides that, "The business and affairs of a corporation shall be managed by a board of directors." The by-laws of Fromm Laboratories, Inc., expressly prohibit the board of directors of such corporation from transacting any business after a vacancy occurs on the board, except to call a meeting of the stockholders to elect a successor director, until such vacancy has been filled. This by-law was undoubtedly adopted for the purpose of insuring that neither the Green nor Fromm interests should be able to manage the corporate business, in the event of the death of a director, as a result of having two members to the other's one among the other three members of the board. We thus have a situation where, ever since Dr. Green's death on September 6, 1947, the board of directors has been without legal power to manage the business of the corporation. The fact that the two directors representing the Fromm faction have usurped such power and may have capably exercised the same is wholly beside the point.

We consider that the decision of the New Jersey court in the case of *In re Collins-Doan Co.* (1949), 3 N. J. 382,

70 Atl. (2d) 159, 13 A. L. R. (2d) 1250, is directly in point on the issue now being considered. The New Jersey statute authorizing the courts to decree dissolution in the event of a deadlock of directors and stockholders is materially different in wording from our own statute. We, nevertheless, consider the following statement in the opinion to be most apropos on the question of discretionary exercise of the power conferred (p. 396) :

"And, if the statutory authority be deemed discretionary in essence, there is no ground for withholding its affirmative exercise here, for *there is no alternative corrective remedy*. Redress for the corporate omissions may be had only by dissolution. The dissension is such as to defeat the end for which the corporation was organized. The deadlock in the corporation's internal management is fatal to its existence." (Emphasis supplied.)

In the instant case there is no *alternative corrective remedy,* other than that provided by sec. 180.771 (1) (a) 4, Stats., which will permit Fromm Laboratories, Inc., to function and be legally managed as required by sec. 180.30 and the corporate by-laws. It, therefore, was an abuse of discretion for the trial court not to have decreed a liquidation.

The further argument is advanced in behalf of the respondent corporation to the effect that Dr. Green must have contemplated that, in the event of his death, the Fromm interests would be able to elect three of the four directors. This is because, when the 1939 amendments to the articles and by-laws were made to insure equal control by the Fromm interests and Green, no change was made in the by-law requirement that only stockholders were eligible to be elected directors. We consider such argument to be entirely extraneous to the issue of the application of sec. 180.771 (1) (a) 4, Stats., to the facts of this case. However, it might not be amiss to voice the observation that Dr. Green could have named two or more persons as trustees of his testamentary trust, instead of appointing one person only as

trustee, in which situation such plural trustees would have been eligible to have been elected directors.

Because of our conclusion that liquidation must be ordered under the provisions of sec. 180.771 (1) (a) 4, Stats., as a result of the shareholders' deadlock, it becomes unnecessary to pass upon the additional ground urged by the plaintiff trustee for decreeing liquidation, viz., corporate mismanagement by those in charge of the corporation subsequent to the death of Dr. Green. The trial court, by its findings, determined that no mismanagement had been proved by plaintiff. Should the receiver to be appointed discover that there has been any illegal disbursement of corporate funds, or dissipation of corporate assets, it will be his duty to seek to recover the same in behalf of the corporation. The findings of fact, conclusions of law, and judgment of the trial court in the instant case will not be *res adjudicata* in any subsequent litigation instituted by the receiver to recover corporate funds or assets.

As pointed out by the Missouri court in *Handlan v. Handlan* (1950), 360 Mo. 1150, 1167, 232 S. W. (2d) 944, when a corporation operating a successful going business is to be liquidated, such business should be preserved, continued, and sold, if at all possible, as such going business. Furthermore, it was suggested in such case that, if the parties could agree upon the sale of the interest of one stockholder group to the other by any plan approved by the court, the same should be permitted. We heartily agree. Therefore, we recommend that the trial court devise some plan whereby both the plaintiff trustee and the Fromm group (considering the latter to constitute a single entity) will be given an opportunity to submit offers to the receiver for the purchase of the 50 per cent stock interest of the other, or the interest of the other in the net assets of the business, before the receiver proceeds with an attempt to liquidate the business. Inasmuch as the Green trust estate probably could only purchase the interest

of the Fromm group on a basis whereby some third party would be found to assume the plaintiff trustee's obligations which would result from the receiver accepting the offer to purchase submitted by the plaintiff, the period fixed for each side to submit such offers to purchase should not be too short to deny to the plaintiff a reasonable time in which to attempt to find such an interested third party. Should the plan formulated by the trial court for consummating such a sale by either the plaintiff or the Fromm group to the other fail of fruition, then the receiver should be directed to liquidate the business and assets of the corporation subject to whatever reasonable directions the trial court may see fit to impose.

Because of the financial burden imposed as a result of operating a going corporate business under receivership, we further recommend to the trial court that the period during which the business shall be permitted to be operated by the receiver be held down to the minimum necessary to enable a sale thereof to be made advantageously and at the same time fully protect the rights of all shareholders.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter a judgment appointing a disinterested receiver of the assets of the respondent corporation, and providing for the liquidation of the business and assets of such corporation unless a plan, such as that recommended in this opinion, can be consummated whereby one of the two contending shareholder factions purchases the interest of the other in the corporation. Appellant's motion for the allowance of the cost of printing his brief in excess of 50 pages is granted.