[Nos. 37450, 37451.   Department Two.   September 16, 1965.]

ART BERGMAN, *Appellant,* v. FRED L. JOHNSON *et al.,*
*Respondents.*

DONALD L. JOHNSON, *Appellant,* v. FRED L. JOHNSON *et al.,*
*Respondents.**

*Jack Steinberg,* for appellants.

*Kumm, Maxwell, Petersen & Lee,* for respondents.

DONWORTH, J.—This is an appeal from dismissal after trial of two petitions for a receivership and the involuntary dissolution brought by two minority shareholders, Art Bergman and Donald L. Johnson, against a complex of closely held interrelated corporations, and their officers and directors. These two cases were consolidated for trial and were heard as a consolidated case on appeal.

Appellants have made 11 assignments of error, which fall into 4 categories. They claim error with respect to (1) the trial court's findings of fact, (2) its exercise of discretion under the involuntary dissolution procedures provided for in RCW 23.01.540, (3) the preliminary dismissal of two of the subsidiary corporate defendants, and (4) the summary judgment against one plaintiff, Donald

*Reported in 405 P.2d 715.

Johnson, prior to trial on substantially the identical issues which were later tried in connection with the Bergman petition in the consolidated trial.

The statement of facts contains 478 pages and refers to 53 exhibits, many of which consist of corporate minute books, accounting records, and letters. We have read the pertinent parts of the exhibits and the complete record, as well as the oral opinion of the trial court and its findings of fact and conclusions of law. We believe that the oral opinion of the trial court explains the problems and their resolution by the trial court very well and very succinctly in view of the ponderous record. It stated:

First, I have read the appellants' brief, Judge Solomon's decision in the Terens case; I have carefully reviewed your brief, Mr. Steinberg, and carefully reviewed the file in the first cause of action, Johnson v. Johnson, carefully reviewed the authority which I had occasion to pass upon which you pointed out in the Western Properties case, and I broadened my consideration of this case to not only the technical requirements of the statute, but also to the general requirements that a majority stockholder owes a fiduciary obligation to exercise fair dealing throughout in the management of all corporations in which he may be involved for the benefit of the particular corporations which others may not be involved but nevertheless have an indirect interest, and for that reason I permitted substantial testimony to come in on the Industrial Development Company matter, Columbia Forest Products and matters of that nature.

The evidence, as I find it today, with respect to the financial condition of all the corporations, indicates that they are probably in worse condition than they were in May of 1962 when Judge Mifflin rendered his opinion. However, it is also true that there has been a substantial retrenchment in the financial commitments of the corporations as reflected by the fact that Fred Johnson is now drawing $500 a month salary. If we were to take the consolidated financial statements and add up all the assets, add up all the liabilities, cancel out intercompany accounts receivable and intercompany accounts payable there would still be enough to pay general creditors and the public which is dealing with these corporations. There is no testimony at all that outside creditors are

in any way at the present time not being paid or having their debts jeopardized.

So it then brings me down to the question as to whether or not there has been between March of 1962 and today, September 12, 1963, actions on the part of the majority stockholders which I would deem to have been a violation of his fiduciary obligation to the corporations, specifically Columbia Veneer and to the minority stockholders of that corporation. The only matter which has been pointed out to the Court dealing with that is the sale of the assets of Industrial Development Company to Dale Schubert.

The Industrial Development Company was basically a personal service type of business, and without the personnel, no matter what contracts it may have had, it would be utterly and completely valueless. I am satisfied from the evidence that the disposition of the fixed assets of the Industrial Development Corporation to Dale Schubert for a consideration equivalent to that for which they had been appraised, and then the use of the proceeds to pay off obligations of the corporation, even including Mr. Schubert's salary, was, on its face, a fair transaction and would not constitute a violation by Mr. Johnson as controlling the transaction of his fiduciary duty.

I think that the key to this entire matter was expressed some place along the line by some witness—I have forgotten who it was—as long as the corporations were making money there was no problem, but it arose after they began running into financial difficulty. And certainly the financial difficulties that faced Columbia companies at this point would make it particularly untenable, it seems to me, for professional men, engineers such as Mr. Schubert and his associates, to continue in the corporation, because the corporation simply provided them with a job, as I view it. There were no dividends ever paid to the other corporations out of Industrial Development Corporation.

So finding that to be the fact, I then have to look and see if there is any other testimony that would lead the Court to do differently than Judge Mifflin did a year ago.. Except for the corporations being in worse financial condition, I don't see that the public is being injured any, and perhaps through some kind of refinancing ar-

rangement, a sale, a lease, or whatever may transpire up in Manitoba, something can be worked out.

The brief which Mr. Steinberg gave me in the Terens case indicated a corporation that was in quite precarious circumstances, also in the wood and logging business, and suddenly developed into a very substantial corporation. These things can happen.

So fundamentally, the Court has to come back to the question whether or not it is beneficial to the interests of the shareholders that the corporations should be wound up and dissolved. I will touch on the matter as to whether or not the corporations have actually abandoned their purposes or accomplishments. The corporations still exist. While they are not presently operating, this does not mean that their purposes have been abandoned. I can conceive of Cougar Logging or Columbia Plywood, or even Industrial Development, being utilized for corporate purposes for which they were originally established.

In determining whether or not the best interests of the stockholders would be served by the involuntary dissolution proceedings, the Court of necessity is called upon to exercise its discretion reasonably for the best interest of the stockholders and the creditors. This puts rather a difficult task before the Court, because we are not only concerned with the interest of the minority stockholders but we also have to consider the interest of the majority stockholders. It may be that the most advantageous thing here would be to dissolve the corporations, permit Mr. Bergman, Mr. Johnson, the other minority stockholders, to take their stock loss, get out of a very difficult and unhappy situation. But as against that we have Mr. Johnson, the majority stockholder, who has controlled and dominated these corporations for many years, who has substantial financial interests which are obviously jeopardized, and it would be grossly unfair to him in weighing the advantages to minority stockholders to appoint a receiver and embark upon a program of involuntary dissolution of these corporations. Until such time as the Court can see some useful social purpose that would be gained by imposing this obligation, and this burden upon Fred Johnson, the Court feels that it would be an arbitrary exercise of my discretion to appoint a receiver, because we know that the appointment of a receiver would force everything to be liquidated

at most nominal values, and it would mean a complete loss of any interest that any of the stockholders would have.

So I cannot see that the interests of the stockholders would be best served by putting these corporations into involuntary dissolution proceedings.

. . . .

I suppose the thing that impresses the Court here, and I imagine makes everybody somewhat unhappy, is to see father and son who apparently were close in business for so many years to have come to a situation where they are suing each other and making such allegations such as have been made.

I must now pass to the second cause of action, which is the one Donald Johnson v. Fred Johnson, alleging a transfer of a share of stock, the procurement of the share of stock by his father fraudulently, and, therefore, seeking its return. Fraud must be proven by clear and convincing evidence. There is no evidence there was intention to defraud. The Court can find in this case that the shares of stock which Mr. Donald Johnson held was simply a share which was held for the purpose of qualifying him to act as a director of Columbia Forest Products. Whether he paid anything for it or not, and I am certain that he felt that he paid a great deal by the years with which he served his father, it was clearly understood that this was nothing more than a qualifying share, and when he signed the endorsement he knew that he had no control of it. I don't think that he was led to believe that he was going to retain ownership, and certainly in view of all ramifications of the Columbia companies it would have been apparent to him that he, having resigned from Columbia Hardbord as an officer, that whoever replaced him as an officer for Columbia Hardbord would be the new director and consequently would get that share of stock in order to qualify him.

■ We are of the opinion that the assignments of error made by appellants are clearly without merit. Each finding of fact is sustained by substantial evidence. Even if we might have made different findings were we the trier of fact, we have no power to revise the trial court's findings in view of the rule of *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn.2d 570, 343 P.2d 183 (1959). We, therefore, accept the court's findings as verities.

■ Furthermore, the granting of a petition for an involuntary corporate dissolution is within the sound discretion of the trial court. As this court stated in *Blinn v. Almira Trading Co.*, 190 Wash. 156, 162, 66 P.2d 1132 (1937):

> The appointment of a receiver is a harsh and extraordinary remedy and will be resorted to by the courts only in extreme cases. [Citations omitted.]
>
> . . . .
>
> The policy of the corporation, if honestly conducted, must be controlled by a majority of the stockholders. Mistakes, inadvertence, or bad policy, if honestly pursued will not warrant the appointment of a receiver. [Citations omitted.]

We cannot say that the trial court, under the facts as found by it, abused its discretion in dismissing the petitions.

The other two categories of assignments of error are immaterial in view of our affirmance of the trial court on the first two categories of assignments of error. The pretrial dismissal of the defendant subsidiary corporations did not result in the exclusion of any evidence which was pertinent, nor in the elimination of any issues. The summary judgment against portions of the Donald Johnson petition did not eliminate any issues or evidence from the trial because the issues and evidence were identical in connection with both petitions for involuntary dissolution, except for the additional issue presented by Donald Johnson relevant to the stock certificate, which issue was fully tried at the consolidated trial.

In view of the foregoing discussion, the judgment of dismissal is hereby affirmed.

ROSELLINI, C. J., HILL and WEAVER, JJ., and RYAN, J. Pro Tem., concur.