[No. 47279-3. En Banc. August 13, 1981.]

HENRY GEORGE & SONS, INC., *Respondent,*
v. COOPER–GEORGE, INC., ET AL,
*Appellants.*

*Paine, Lowe, Coffin, Herman & O'Kelly,* by *John G. Pattullo,* for appellants.

*William B. Bantz* and *Mark D. Bantz,* for respondent.

DIMMICK, J.—This appeal raises the question of whether the failure of shareholders of a Washington corporation to elect new directors at two successive annual meetings is, by itself, sufficient grounds for dissolution of a corporation under RCW 23A.28.170(1)(c). The trial court held that it was and appointed a receiver to take charge of the dissolution.

We conclude that this provision is not mandatory, but gives the court jurisdiction to exercise its discretion in the best interests of all the shareholders. Therefore, we reverse.

Cooper–George, Inc., was created in 1950 by J. L. Cooper, Henry George and John George, for the primary purpose of building an apartment house. The shares were divided evenly between the Cooper family and the George family. J. L. Cooper was issued 4,995 shares of common stock, which he placed in trust for his grandsons, James Marr and Robert Marr. Henry George and Sons, a partnership, was issued 4,993 shares and Henry George and John C. George, individually were each issued 1 share.

The first shareholder deadlock in voting for a board of

directors occurred at the January 1978 annual meeting. Those voting were Robert Marr, the three trustees of the James Marr trust, and a representative of Henry George and Sons. Upon reaching deadlock, the previous board, consisting of Robert Marr, James Marr and Sue George, remained in office.

In June of 1978, Pacific Securities Company bought out Henry George and Sons, thereby gaining control of its 4,995 shares in Cooper–George, Inc. Wayne E. Guthrie, president of Pacific Securities Company, was appointed a director of Cooper–George to replace Sue George, who had resigned as a result of the sale of shares to Pacific Securities Company. Robert Guthrie, son of Wayne Guthrie, became president of Henry George and Sons and held 2 shares of Cooper–George, Inc. Robert Guthrie had attempted to buy James Marr's 25 percent interest in Cooper–George for a low price within 48 hours of Pacific Securities' purchase of Henry George and Sons. James Marr had declined to sell. Therefore, the Guthrie family controlled 50 percent of the shares of stock and the Marr brothers controlled the other 50 percent.

The second deadlock of the shareholders appeared at the January 1979 annual meeting. The new shareholders were also unable to elect a new board of directors, and as before, the previous board remained in office.

In April of 1979, Henry George and Sons, respondent herein, initiated this suit for dissolution under RCW 23A.28.170(1), which reads as follows:

> Jurisdiction of court to liquidate assets and business of corporation. The superior courts shall have full power to liquidate the assets and business of a corporation:
> (1) In an action by a shareholder when it is established:
> (a) That the directors are deadlocked in the management of the corporate affairs and the shareholders are unable to break the deadlock, and that irreparable injury to the corporation is being suffered or is threatened by reason thereof; or
> (b) That the acts of the directors or those in control of

the corporation are illegal, oppressive or fraudulent; or

(c) That the shareholders are deadlocked in voting power, and have failed, for a period which includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired or would have expired upon the election of their successors; or

(d) That the corporate assets are being misapplied or wasted.

Respondent sought an injunction and appointment of a receiver for Cooper–George, Inc., and for the appointment of a liquidating receiver to sell for cash all the assets of Cooper–George, Inc., at a public sale with the understanding that the purchaser could, if he or she so desired, assume the present mortgage on the subject real property and with the further understanding that a stockholder of Cooper–George would have the right to meet the highest bid at the public sale and be awarded the property by the duly appointed liquidating receiver.

At trial, the evidence indicated that the corporation was solvent, that it continued to do business, but that for two successive board meetings the shareholders had failed to elect a new board of directors. The trial court found that under RCW 23A.28.170(1), the requisite grounds for dissolution existed and ordered that a receiver be appointed to take charge of the assets and liquidate the corporation. Robert Marr and the trustees of the James Marr trust appealed alleging that the failure to elect new directors at two successive annual meetings was not, by itself, sufficient grounds for dissolution.

The Cooper–George apartment house, a 13–story apartment building in downtown Spokane, is the sole asset of the corporation. The appellants contend that RCW 23A.28-.170(1)(c) does not require a dissolution when a company has been in business for 28 years, operates a major apartment building, is solvent, is not being mismanaged, is not deadlocked at the board of director level regarding transaction of business, is not denying to any shareholder requested information, and is not causing any shareholder to benefit to the financial detriment of another.

In support, the appellants note that the corporation has transacted business by agreement. The directors agreed to raise rents, purchase valves to allow more efficient heating of the apartment building, expend funds to retube the coal-fired boiler at the apartments, and make plans to correct the fire alarm system at the apartments upon demand of the city. The respondent maintains that the mere fact that the shareholders were deadlocked in electing a board of directors for 2 successive years is all that is required under RCW 23A.28.170(1) to dissolve a corporation.

RCW 23A.28.170 was taken in full from section 97 of the Model Business Corporation Act, including the title which is "Jurisdiction of Court to liquidate assets and business of corporation". *See* 2 Model Business Code Annotated § 97, p. 555 (hereafter MBCA). To date, however, there are no Washington cases interpreting RCW 23A.28.170. The legislative history surrounding the act is silent. We have had several predecessor statutes permitting involuntary dissolution.

I

At common law, many courts refused to intervene in shareholder disputes since the State licensed the corporation, and as such the State and not the courts had the authority to dissolve the corporation. In a few jurisdictions, courts of equity began to carve out areas in which they would use the powers of the chancellors to liquidate the assets and business of the corporation. A few courts asserted the power to liquidate on a showing of irreparable injury to the shareholders and the corporation due to gross or fraudulent mismanagement. 2 MBCA § 97, p. 553–54.

More recently, many states have adopted statutory provisions granting courts of equity power to dissolve corporations in suits brought by shareholders where irreparable injury to the shareholders or the corporation occurred or was threatened. 2 MBCA, *supra.* Some states adopted legislation permitting liquidation and dissolution because of deadlocks among the owners or the directors of the corpo-

ration. MBCA, *supra.* In determining whether to grant dissolution under either the common law or statute, the principal inquiry appears to be whether dissolution would be beneficial to the shareholders and not injurious to the public. MBCA, *supra.*

Under the predecessor statutes to RCW 23A.28.170, the Washington courts permitted dissolution based on shareholder dissension or deadlock only under the most egregious circumstances. For example, in *State ex rel. Conlan v. Oudin & Bergman Fire Clay Mining & Mfg. Co.,* 48 Wash. 196, 93 P. 219 (1908), an action for dissolution was brought pursuant to the provisions of Ballinger Code, section 5780, which allowed for an action against a corporation where the corporate acts amounted to surrender or forfeiture of their rights and privileges as a corporation and where the exercised power was not conferred by law. This court permitted dissolution under the statute because it appeared that the owner of one half of the stock represented the corporation without authority, destroyed its business through negligence, conducted a rival business and refused to elect or help elect a trustee by reason whereof no business could be legally transacted.

In the case of *Boothe v. Summit Coal Mining Co.,* 55 Wash. 167, 104 P. 207 (1909), the court appointed a receiver when it appeared that the stock in the corporation was held equally by two persons who could neither agree nor elect officers. Moreover, one set of officers, by reason of the failure of election, claimed to hold over. Those officers were not honestly conducting the business of the corporation, as evidenced by extravagant management and by increased salaries paid to one of the shareholders to the exclusion of the other 50 percent shareholder. The controlling officer/shareholder with "his two dummies" seized complete control of the corporation, excluded the other shareholder from all participation in the business, refused an inspection of the books and illegally increased his own salary. *Boothe,* at 174. The court appointed a receiver on the basis of Ball. Code § 5456, which authorized the

appointment of a receiver "'[w]hen in the discretion of the court, it may be necessary to secure ample justice to the parties.'" *Boothe*, at 176. The court further stated:

> While we recognize and adhere to the doctrine that a court of equity should hesitate before appointing a receiver over a solvent corporation, and should make such an appointment in exceptional instances only, yet we are constrained to hold that equity, good conscience, justice, and the rights of the parties demand such an appointment in this case.

*Boothe*, at 179.

More recently, we affirmed a decision by a trial court denying dissolution under a revised version of the corporate code. In so ruling, we recognized that dissolution was within the sound discretion of the trial court and could be granted after considering the best interests of all the shareholders. *Bergman v. Johnson*, 66 Wn.2d 858, 405 P.2d 715 (1965) (construing RCW 23.01.540, repealed by Laws of 1965, ch. 53, § 166, p. 1176, effective July 1, 1967). *See also Blinn v. Almira Trading Co.*, 190 Wash. 156, 66 P.2d 1132 (1937) (decided under Rem. Rev. Stat. §§ 3803–50 (Supp.)).

## II

It is within this background of case law that our legislature saw fit to pass the Model Business Corporation Act. Section 97 of the act, as adopted as RCW 23A.28.170(1), permits involuntary dissolutions by shareholders in four different situations. Although RCW 23A.28.170(1) clearly provides that it is within the power of the court to order dissolution upon finding one of the four situations, we hold that the power is discretionary. Thus, under subsection .170(1)(c), the court need not order a dissolution merely because a party proved, at trial, that the shareholders were deadlocked in voting power and unable to elect a slate of directors at two consecutive meetings.

This construction was also adopted in *Jackson v. Nicolai–Neppach Co.*, 219 Or. 560, 348 P.2d 9 (1959), one of the few cases to date interpreting a provision identical to RCW 23A.28.170(1)(c). In *Jackson* the Oregon Supreme

Court held that under its statute, the court was not required to grant dissolution as a matter of right but instead must exercise its equitable discretion, and consider the actual benefit and injury to the shareholders resulting from dissolution.

The facts in *Jackson* are quite similar to those in the case at bench. In *Jackson,* a 50 percent shareholder in a solvent close corporation brought a suit in equity alleging a deadlock of the shareholders and a failure for more than 2 years to elect successors to the board of directors. The dispute as to corporate policy had arisen after the death of the plaintiff's husband, from whom she had inherited the 50 percent interest. The other shareholders were the plaintiff's brother–in–law and his wife. The corporate bylaws required that the board of directors be composed of three shareholders, elected annually. After her husband's death, the plaintiff had acted as vice–president, the sister–in–law as secretary–treasurer, and the brother–in–law as president. The first dissension arose over defeat of the plaintiff's motion to amend the bylaws to allow four directors, which would give plaintiff equal numerical representation on the board. Other difficulties arose over the payment of dividends, and, after 3 years of failure to elect any successors or amend the bylaws, the plaintiff brought suit, asking for the appointment of a receiver and dissolution of the corporation.

In denying dissolution, the Oregon Supreme Court recognized that dissolution was not to be granted as a matter of right as the statutory provision is "clearly couched in language of permission." *Jackson,* at 574. The statute contemplates that upon taking jurisdiction, the trial court will "bring its discretion to bear in granting or refusing to grant equitable relief." *Jackson,* at 574. The court explained the reason for such a rule as follows:

> The common law rule was thought to be an insufficient safeguard of the rights of the half–owner of a corporation who happened to be out of power. The drafters of the shareholder deadlock provision apparently thought that

any statutory rule which provided for liquidation as a matter of law would insufficiently safeguard the rights of the half–owner who happened to be in power. As we read the statute its intent is to obligate the courts to thread their way from case to case without the assistance of sweeping generalizations.

*Jackson,* at 575.

The Wisconsin Supreme Court has ruled to the contrary. In interpreting the identical statutory provision, the Wisconsin Supreme Court held that all that needed to be shown prior to granting dissolution was shareholder deadlock in electing a new slate of directors over 2 consecutive years. *Strong v. Fromm Laboratories, Inc.,* 273 Wis. 159, 77 N.W.2d 389 (1956).

The Oregon Supreme Court distinguished the *Strong* and *Jackson* decisions, on the basis that more than mere shareholder deadlock was present in *Strong.* Rather, in *Strong,* the corporation was prevented, under the bylaws, from conducting *any* business until the vacancy on its board was filled. *Jackson,* at 579–82. We find the Oregon Supreme Court's analysis in *Jackson* persuasive.

A second reason for adopting such an interpretation is that to construe the statute otherwise (that is, to construe the statute as merely requiring a showing of the requisite deadlock requirements), would be manifestly unjust for it would dictate that the courts grant the harsh sanctions of dissolution regardless of the consequences to shareholders or to the public at large.

The question is essentially one for resolution through the familiar balancing process and flexible remedial resources of courts of equity. We agree with the conclusion of the text writer of corporations:

Involuntary dissolution proceedings, although generally statutory in most jurisdictions, are fundamentally equitable in nature, and the statutes should be construed and applied consistent with equitable principles. While the general effect of the statutes is to prescribe the procedures and particularize the grounds for dissolution, the inherent power of equity is not thereby impaired but, to

the contrary, such power gives meaning to the statutory provisions.

(Footnotes omitted.) 16A W. Fletcher, *Private Corporations* § 8034.1 (1979).

Therefore, we conclude, after considering our prior statutes and case law, that our present statute contemplates that once the requisite showing of the jurisdictional requirements are met, the trial court, in its discretion, shall determine whether there exist equitable grounds for ordering dissolution of the corporation. In so ruling, the trial court should consider the seriousness of the deadlock and whether the corporation is able to conduct business profitably despite the deadlock. Moreover, the trial court should consider whether such a dissolution will be beneficial or detrimental to all the shareholders, or injurious to the public. For example, the court may consider such factors as the length of time the company has been in business, the stated purpose of the business, the original incorporators, whether one shareholder has shown a clear design to take over the business and is in a financial posture to do so to the detriment of other shareholders who may be injured financially by tax consequences, what the market for sale and purchase is at the instant time, whether the shareholders are in a relatively equal bargaining position, and whether it is in the best interests of all the shareholders to leave them to find their own solutions by one party buying out the others in a fair market value situation rather than by a forced sale. The determination by the trial court will not be disturbed by an appellate court except in clear instances of abuse of discretion. *See generally Griggs v. Averbeck Realty, Inc.,* 92 Wn.2d 576, 599 P.2d 1289 (1979); *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971).

In this case the trial court erroneously ruled that Cooper–George should be dissolved merely on the basis that the jurisdictional requirements were met. We have not considered the actual details of the facts in the instant case and do not presume to judge the merits. Hence, we remand the matter to the trial court to determine, after considering

954

the best interests of all the shareholders, whether dissolution is warranted.

BRACHTENBACH, C.J., and ROSELLINI, STAFFORD, UTTER, DOLLIVER, HICKS, WILLIAMS, and DORE, JJ., concur.