Cletus STRUCKHOFF, Plaintiff–
Respondent,

v.

ECHO RIDGE FARM, INC., Robert
Struckhoff and Connie Struckhoff,
Defendants–Appellants.

No. 61228.

Missouri Court of Appeals,
Eastern District,
Division Two.

June 30, 1992.

Robert A. Zick, Kurt A. Voss, Robert A. Zick & Associates, Washington, for defendants-appellants.

E. Darrell Davis, David & Schroeder, St. Charles, for plaintiff-respondent.

CRANDALL, Judge.

Defendants, Echo Ridge Farm, Inc. (Echo Ridge), Robert Struckhoff and Connie Struckhoff, appeal from the grant of summary judgment in favor of plaintiff, Cletus Struckhoff, in an action for dissolution of Echo Ridge. We reverse and remand.

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits filed in support of the motion, show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Krause v. U.S. Truck Co., Inc.*, 787 S.W.2d 708, 709 (Mo. banc 1990). A genuine issue of material fact exists where there is the slightest doubt about the facts. *McKim v. Sears Rodeo Ass'n, Inc.*, 789 S.W.2d 217, 219–220 (Mo.App.1990). On appeal, we consider the facts and the reasonable inferences therefrom in a light most favorable to the party against whom the judgment was rendered. *First Nat. Bank v. Chemical Products, Inc.*, 637 S.W.2d 373, 375 (Mo.App.1982).

The record in this case shows that Echo Ridge is a dairy farm which was incorporated in 1976. Felix Struckhoff (father) is the father of Robert and Cletus. He contributed farmland in exchange for 900 shares of stock in Echo Ridge. Robert and Cletus each cancelled debentures issued to them by Echo Ridge in exchange for 75 shares. In 1978, with the intention of dividing Echo Ridge between Robert and Cletus, father gave 450 shares to Robert and his wife, Connie; at the same time, father gave 450 shares to Cletus.

Currently, Robert, Connie and Cletus are shareholders and directors of Echo Ridge. Robert owns 265 shares and is president, Connie owns 260 shares and is secretary/treasurer and Cletus owns 525 shares and is vice-president.

From 1976 to 1987, Echo Ridge employed Cletus and Robert as herdsmen. In 1987, Cletus moved to Florida and terminated his employment with Echo Ridge. Robert remained as a herdsman and Echo Ridge gradually increased his salary from approx-

imately $17,000 per year in 1987 to approximately $33,000 per year in 1990. Echo Ridge hired Connie as a bookkeeper and paid her a salary of $200 per month.

From 1987 through 1990, Echo Ridge slaughtered at least two cattle per year for consumption by its employees, a continuing practice from the time of its incorporation. It also continued paying medical insurance for its full-time, permanent employees. Despite his resignation as an employee in 1987, Echo Ridge provided medical coverage for Cletus under its medical plan until he instituted the present action in 1991.

In 1990, Echo Ridge made loans to two children of Robert and Connie. The total amount of the loans was approximately $5,000 at an interest rate of six and a half percent. To date, the children have made only sporadic payments. At the times the loans were made, however, Robert held demand notes which were payable to him by Echo Ridge. The notes were worth more than $8,000 and carried interest rates of either six percent or zero percent. Robert could have forced payment of the notes and used the proceeds for the loans to his children. Instead, the directors voted to make the loans to the children at an interest rate higher than those on Robert's demand notes.

Echo Ridge averaged a profit of approximately $190,000 for each of the last four fiscal years preceding this suit. During that time period Echo Ridge declared no dividends. Since the incorporation of Echo Ridge, it has been corporate policy to apply profits toward acquisition of assets and reduction of debt and not to declare dividends.

Cletus only participated in two of 39 board meetings held between 1987 and 1991. Cletus stated that he did not plan to participate in the operation of Echo Ridge after leaving Missouri. At no time did Cletus indicate he wished to resume participation in Echo Ridge operations either as a director or as an employee.

Despite provisions in the by-laws requiring a meeting of the shareholders to elect directors each April 7, Echo Ridge held no such meetings from 1984 through 1991.

An annual meeting was called in September 1991. Robert and Connie attended the meeting but no action could be taken because their 50 percent interest did not constitute a quorum.

On May 13, 1991, Cletus filed a two count petition. Count I sought dissolution of Echo Ridge; Count II sought damages for breach of fiduciary duty by Connie and Robert. Defendants filed a counterclaim. Cletus then filed a motion for summary judgment as to Count I, which the trial court granted. The trial court then certified the judgment as final for appeal under Rule 74.01(b).

Section 351.494, RSMo (Cum.Supp.1991) grants the trial court discretion to dissolve a corporation under certain conditions. The relevant part of the statute states:

**351.494. Grounds for judicial dissolution.**—The circuit court *may* dissolve a corporation:

\* \* \* \* \* \*

(2) In a proceeding by a shareholder if it is established that:

\* \* \* \* \* \*

(b) The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, or fraudulent;

(c) The shareholders are deadlocked in voting power and have failed, for a period that includes at least two consecutive annual meeting dates, to elect successors to directors whose terms have expired ... (emphasis added).

Based on the failure of the shareholders to elect new directors on two successive annual meeting dates and the shareholder deadlock in voting power, the trial court concluded it had discretion to dissolve Echo Ridge under § 351.494(2)(c). Furthermore, based on the finding that Robert and Connie were oppressive in their management of Echo Ridge, the trial court concluded it also had discretion to dissolve Echo Ridge under § 351.494(2)(b). The court found that failing to call annual meetings, authorizing loans from the corporation to their children, excluding Cletus from corporate affairs, terminating Cletus' life insurance

and slaughtering Echo Ridge cattle were acts of oppression by Robert and Connie. In sum, the trial court concluded both §§ 351.494(2)(b) and (c) provided a basis for it to exercise its discretion to dissolve Echo Ridge.

We first address whether the trial court erred in granting summary judgment based upon a finding that plaintiff was entitled to dissolution of the corporation as a matter of law.

Dissolution of a corporation is an equitable action in which jurisdiction is granted by statute. *Fix v. Fix Material Co., Inc.*, 538 S.W.2d 351, 354 (Mo.App. 1976). A court of equity is to take jurisdiction of the cause, once the requisite showing is made, and then exercise its discretion in granting or refusing equitable relief.[1] *Id.* at 357. Dissolution of a corporation is a drastic remedy and courts should resort to this procedure only to prevent irreparable injury, imminent danger of loss or a miscarriage of justice. *Gonseth v. K & K Oil Company*, 439 S.W.2d 18, 27 (Mo.App. 1969). The trial court, before exercising its discretion, should consider the effect the dissolution would have on the public as well as the shareholders. *Henry George & Sons, Inc. v. Cooper-George, Inc.*, 95 Wash.2d 944, 632 P.2d 512, 517 (Wash. banc 1981). Generally, a discretionary ruling does not lend itself to summary judgment because of the varying results that might be legally permissible under such a ruling.

Here, defendants submitted several affidavits which demonstrated that the continued existence of Echo Ridge would benefit the public through its high production and profitability. Defendants also presented affidavits which demonstrated that irreparable injury would occur to defendants if the trial court dissolved the corporation. Based upon the affidavits submitted by the parties, unresolved issues of material fact remain in the case.

Moreover, equitable questions remain unresolved as well. Even assuming plaintiff was entitled to some equitable relief, dissolution of the corporation was not the sole remedy available to the trial court. Section 351.494 is permissive in nature and a finding of jurisdiction under the statute does not mandate dissolution of the corporation. Thus, the trial court erred in granting summary judgment based upon a finding that plaintiff was entitled to dissolution of Echo Ridge as a matter of law.

We next address the trial court's findings with regard to the jurisdictional elements of § 351.494. The trial court's first basis for finding jurisdiction was that the shareholders were deadlocked in voting power and had failed to elect new directors on two consecutive annual meeting dates. *See* § 351.494(2)(c). Defendants argue that subsection (c) of the statute, which became effective August 29, 1990, added a jurisdictional ground that was not in the preceding statute. *See* 351.485.1(1)(a)–(c), RSMo (1986). They contend that because a new ground for assumption of jurisdiction was added by the enactment of subsection (c), the change is substantive rather than procedural. Thus, defendants urge that subsection (c) not be applied to events prior to its effective date because to do so would be retroactive application of the law. We agree.

Without a clear showing of legislative intent, a statute may not be applied retroactively if it affects substantive rights of the parties. *State ex rel. St. Louis–San Francisco Ry. Co. v. Buder*, 515 S.W.2d 409, 410 (Mo. banc 1974). Substantive rights are those that, *inter alia*, attach a new disability with respect to transactions or considerations already passed. *Id.* "[T]he underlying repugnance to the retro-

---

**1.** We note that *Fix* was decided prior to the effective date of § 351.494, RSMo (Cum.Supp. 1991). The present statute, however, retains the same procedure for granting dissolution of corporation. Specifically, the statute states "[t]he circuit court may dissolve a corporation" if the proper conditions are met. The use of the term "may" indicates continued judicial discretion. The new statute simply changed the jurisdictional parameters. *See Henry George & Sons v. Cooper-George, Inc.*, 95 Wash.2d 944, 632 P.2d 512, 513 (Wash. banc 1981) (which discusses a Washington statute that is nearly identical to the present Missouri statute).

spective application of laws is that an act or transaction, to which certain legal effects were ascribed at the time they transpired, should not, without cogent reasons, thereafter be subject to a different set of effects ..." *Id.* at 411.

Assuming, without deciding, the factual validity of the trial court's finding, one of the annual meeting dates on which the shareholders failed to elect directors occurred on April 7, 1990. Thus, the meeting was prior to the effective date of § 351.494(2)(c). Prior to August 29, 1990, § 351.485, RSMo (1986) controlled judicial dissolution of Echo Ridge. Section 351.485 did not provide for jurisdiction on the basis of failure to elect directors on two consecutive meeting dates. Because the new statute subjects Echo Ridge to a new ground for assumption of jurisdiction by the circuit court, it cannot be applied to the April 7, 1990 meeting date. It is, therefore, not a proper basis for finding jurisdiction in this case.

■ The trial court's second basis for finding jurisdiction was that Robert and Connie, as directors, were oppressive in their operation of Echo Ridge. *See* § 351.494(2)(b). Defendants argue there are questions of material fact whether Robert and Connie were oppressive in managing Echo Ridge. We agree.

■ The existence of oppression must be determined on a case by case basis. *Jackson v. St. Regis Apartments, Inc.,* 565 S.W.2d 178, 183 (Mo.App.1978). In general, however, oppression suggests harsh, dishonest or wrongful conduct and a visible departure from the standards of fair dealing. *Id.* Unless extremely serious, no single act would constitute sufficient oppression to allow dissolution. *Fix,* 538 S.W.2d at 358.

Here, the trial court's findings of oppression involve acts, with the exception of the loan to the children, that were, according to affidavits submitted by defendants, accepted business practice prior to the departure of Cletus from employment with Echo Ridge. Thus, defendants raised questions of fact regarding whether Robert and Connie's management of Echo Ridge was op-

pressive. A finding of oppression as a matter of law was therefore erroneous. As for the loans to the children, even assuming they were inappropriate, reasonable persons could disagree on whether the loans were serious enough to constitute oppression. The record is not conclusive on the jurisdictional requirement of § 351.494(2)(b), thus the grant of summary judgment was erroneous.

The judgment of the trial court is reversed and the cause remanded.

GRIMM, P.J., and CARL R. GAERTNER, C.J., concur.